Memorandum. After the argument, the counsel for the demand-ant moved to discontinue, or enter a nolle prosequi, as to the parcel of the demanded premises, of which the demandant was only cestui que trust. And in support of the motion they cited 2 Crompton’s Practice, 337. —1 Tidd’s Practice, 632. —1 Saund. 207, note 2.
Jackson, J.,
delivered the opinion of the Court. The objection that the evidence did not comport with the declaration, because the demandant counted on his own seisin in common form, and proved only a title as mortgagee, is settled by the case of Partridge Ux. vs. Gordon.
The next objection which was argued, relates to one of the pieces *294 of land demanded in the writ, as to which it appears that [ * 356 ] the demandant was only cestui que trust. * If this action had been brought against a stranger, it might have presented a different question. But the tenant is not a stranger as to this piece of land. He mortgaged it to one Nehemiah Somes, and his right of redemption under that mortgage has never been foreclosed. He has then a good title to the land, as against all persons but N. Somes and his lawful assigns, and the demandant is not such an assignee. It is true, that the mortgage was taken by N. Somes as guardian of the demandant, and for his benefit; but the legal estate in the mortgage was never in the demandant, and he could not maintain a suit to foreclose the mortgage. Of course, the tenant could not, by plea, or otherwise, set forth the condition in the deed of mortgage, so as to have the conditional judgment entered, in the manner prescribed in the case of Partridge & Ux. vs Gordon.
As to the supposed estopel to the tenant to deny the seisin of the demandant, by accepting from him a deed of conveyance of the piece of land in question, it may be answered, that exception was taken to the insufficiency of the demandant’s evidence, before the tenant produced this deed to the jury. But there are other objections to this estopel. The deed from the demandant to the tenant does not purport to convey the land in the common form in fee simple. It is written on the back of the mortgage deed before mentioned, and purports to assign to the tenant the debt therein mentioned, as well as the land. This being made to the mortgagor himself, would, if operative at all, have amounted only to a release of the debt, and of the land mortgaged as security for it.
Now, if a mortgagor accepts such a release from a person not authorized to make it, it cannot be supposed that he thereby acknowledges that the relessor is seised of an absolute estate in fee -, and that, but for the release, he, the relessor, would be entitled to hold the land forever against the relessee. The relessor does not, by the act of making the release, claim to have such a [ * 357 ] title; and of * course the relessée cannot be presumed to assent to the validity of such a claim.
But further, the deed is declared by the demandant to be void, as obtained from him by fraud and imposition, and the jury have so found it. Both parties are then left upon their respective titles, as they stood when the deed was made.
It is true that if the' deed had purported to convey land in fee. in the common form, with the usual covenants of seisin, &c. on the part of the demandant, the acceptance of it by the tenant would be evidence that the demandant was at that time seised, at least as *295 between those two parties ; and that the tenant was not seised. This would be prima facie, sufficient to maintain the demandant’s action; that is, if the deed was avoided as against him. But it would not preclude the tenant from showing another better title in himself; and as to the piece now in question, he has shown a better title. We are therefore of opinion that, as to this part of the demanded premises, the demandant was not entitled to recover.
The demandant has moved to discontinue, or enter a nolle pro sequi as to this part; and we see no objection to his doing so. This seems to be one of the cases, in which, by the ancient law, a man was not allowed to abridge his demand; because in this the thing demanded is particularly mentioned and described in the writ; although it may be doubted whether the reason of the rule applies in our practice. Com. Dig. Tit. Abridgment, A. 2. —3 Lev. 68. But however this may be, the cases cited for the demandant, particularly that of Wigglesworth vs. Dallison, mentioned in Williams’s note 2, 1 Saund. 207, seem clearly to show that he may enter a nolle prosequi, as to a distinct part of his demand, in a case like the present.
This is liable to less objection here, than in the English practice, because it has no effect on the costs. If this verdict should be set aside, the demandant might, before a new trial, amend his declaration, by striking out the * description of the [ * 358 ] piece of land in question; and this would probably be allowed without costs, because it is in ease of the tenant, and cannot in any way prejudice him. So, without any amendment, the demandant might suffer a verdict against himself for that piece; and if he recovered any other part of the demanded premises, he would, by our statute, be entitled to full costs. It is like the case, which not unfrequently occurs in personal actions, where the jury have given too much in damages; if the plaintiff will remit the excess, the Court never set aside the verdict, on account of a mistake, which is thus rectified.
The only remaining questions relate to the competency and sufficiency of the evidence, and the directions of the judge respecting it. We are all satisfied that the evidence, offered on the part of the demandant, was proper to be submitted to the jury; and as far as we have a right to judge of it, was sufficient to warrant the inference, which the jury appear to have drawn from it.
The point to be established was, that the demandant was seised of the land; and that the conveyance, which he had made of it to the tenant, was obtained from him by fraud and imposition. It was competent evidence for this purpose to show that the demandant was a person of feeble understanding, so that he might be defrauded by artifices, which would not have prevailed against common men *296 and that the tenant had acquired an extraordinary influence over him. To prove this fact, of the influence that the tenant had acquired, the transactions between them, both before and after the conveyance, were properly admitted in evidence.
The account settled by the tenant in the probate office, with the conduct of the demandant on that occasion, in urging the allowance of the account, had a strong tendency to prove this point. The very extraordinary sums which were charged in that account, as expended by the ward while under age, were proper to be considered by the jury, as proving that the tenant had indulged { * 359 ] him in a most * pernicious course of extravagance and dissipation; which, whilst it tended to impair his intellect, would also increase the influence of his guardian over him. Or, if the jury doubted whether all this money was so expended, the allowance of the account, with' the approbation of the demand-ant, would have a tendency, not less material, to maintain this part of the demandant’s case. The relation of guardian and ward, and the manner in which the parties had lived together for some years, before the demandant arrived at full age, with the execution of the deeds in a few days after that event, were all facts of the like tendency, and proper for the consideration of the jury.
The transactions at the time of the conveyance were peculiarly proper evidence, on the question of fraud in obtaining the conveyance. Not only the manner, in which the deeds were prepared and executed, but the consideration given for them, and all the particulars of the bargain, were properly admitted in evidence. It was not an attempt to disprove the consideration alleged to have been paid for the land, but to show the nature and value of that consideration ; leaving it to the jury to decide from that, together with the other circumstances, whether the demandant was deceived and imposed upon in the negotiation.
So the acts of the tenant, or the transactions between the parties, posterior to the conveyance, so far as they tended to prove the imbecility of mind in the one, and the influence acquired and exercised by the other, had a direct tendency to maintain the issue for the demandant. Of this description was the release, given in March, 1817, by the demandant to the tenant, after he had commenced a suit on the notes. Even the conduct of the demandant on the trial of this cause, as seen by the jury, might be justly taken into consideration, as tending to prove the same point. If they thought it exhibited an extreme weakness of intellect in the demandant, rr an extraordinary influence exercised over him, to sit by the [ * 360 ] man who * had obtained from him these valuable estates. and evidently desire that he should hold them, against *297 the exertions of his legal guardian to reclaim them ; and this, as the jury might believe, without any payment received by the demand ant, and without the prospect of receiving any ; if the jury formed this opinion from what they saw, it must and ought to have influenced their verdict on the main question, which was submitted to them.
It is not :ompetent to a party, imputing fraud to another, to offer evidence tc prove that the other has dealt fraudulently at other times, and in transactions wholly disconnected with that which is on trial. This would tend to prejudice the minds of the jury, by impeaching the general character of the party charged with baud, when he had no right to expect such an attack, and could not be prepared to defend himself, however unimpeachable his conduct might have been. But a party can never object, that he is surprised by evidence of any facts connected with, or relating immediately to the transaction which gave rise to the suit.
All the evidence objected to in this case, that does not come within this description, is of another kind not less justifiable or proper; that is, it tended to prove that the demandant was a man of weak mind, and easily imposed upon; and that the tenant availed himself of that circumstance, and abused the influence that he had acquired over him. It was not alleged that the demandant suffered an occasional and temporary insanity, but that his mind was uniformly weak. The evidence would therefore necessarily apply to times before and after the particular transaction in question ; leaving it to the jury to decide, whether he was thus weak and liable to imposition at the time of that transaction. So as to the influence exercised by the tenant, it was necessary to prove that he had acquired, and that he possessed such influence and control over the mind of the demandant, before it could be * proved that he exercised it, on the particular occasion [ *361 ] referred to.
This evidence was left to the jury, with proper directions from the judge before whom the cause was tried; and we can see no ground on which we should be justified in setting aside the verdict (6).

Judgment on the verdict.

 [There is perhaps not much reason to doubt that the deeds from Somes to Skin nor might, in equity, upon terms, under the circumstances of the case, have been se aside. But it seems to be quite as clear, that at law they were unimpeachable. Somes was not non compos mentis, nor legally incapable of making a valid deed and no such fraudulent practices were shown, as at law could invalidate the deeds. Here was, at most, but constructive fraud. Indeed, in the case of simple actual fraud where there is not what in law is termed covin, unless the fraud he practised in relation to the execution of the deed, as, for instance, by fraudulently misreading or otherwise fraudulently obtaining such an instrument as was not intended to be given, the better opinion seems to be that the instrument cannot, for this reason be *298 impeached at law. —Rowntree vs. Jacob, 2 Taunt. 141. —Belden vs. Davis, 2 Hall, 433. —Dorr vs. Munsell, 13 Johns. 430. —Vrooman vs. Phelps, 2 Johns. 177. —Jackson vs. Hills, 8 Cowen, 290. —Franchot vs. Leach, 5 Cowen, 506. —Even in equity a title passes to the grantee, and the instrument at most is held to be voidable, and not absolutely void, or the grantee is held to be a trustee for the grantor. The case of Somes vs. Brewer (2 Pick. 184) can stand only on this ground. The Court indeed say, that the deed might be treated as a nullity, as between the grantor and grantee, at the election of the former, and at the same time be unimpeachable as between the grantor and a bona fide purchaser without notice, who might insist on its validity. This doctrine is quite novel and untenable in a1 court of law. But what seems more remarkable is, tka’. our courts have in many cases refused to take jurisdiction or grant relief in equity, when it would seem, by a liberal construction of the acts conferring such jurisdiction and authority, they might have done so ; and yet, in the above case, they extended the common law jurisdiction to the utmost verge of the jurisdiction of a court of chancery.—Ed.]