Parker C. J.
[After stating the facts.] On this state of facts we are called upon by the demandant, through his guardian, to vacate the title of the tenant in the parcels of land conveyed as before mentioned, on the ground that the deeds to Skinner were void, so that no title can be founded on them adverse to the demandant. By the judgment of this Court in an action heretofore brought by Somes against Skinner, for other tenements conveyed under like circumstances, after a trial by a jury, Somes has recovered his seisin and possession ; and it is now supposed that for the same causes he has a legal right to recover against the present tenant, notwithstanding the manner in which the tenant has become possessed of the estates. This is a question ->f great importance ; and it should seem, of some novelty, fo„* in regard to another valuable estate conveyed to Skinner at tne same time, under the same circumstances, and by Skinner afterwards conveyed to William R. Lee, an action is still pending in the county of Norfolk between this demandant and Lee, and one very long and arduous trial has taken place, in which the principal subject of inquiry was, whether the tenant in the action was to be affected by the viciousness of Skinner’s title, on account of his knowledge of the transactions between Skinner and the demandant. In that case this shorter route to a successful termination in favor of the demandant did not occur to the same counsel who are employed for the demandant in this action, or at least it was not suggested to the Court, notwithstanding an elaborate report was made of the trial, and several questions of law proposed for the consideration of the Court. This circumstance is mentioned to account in some measure for the caution and delay which have been observed by the Court in coming to a final decision of this cause, and the pains which *201 hav'e been taken to examine critically the argument and authorities which have been laid before them in support of the demandant’s claim ; which certainly had so plausible an appearance, as to have excited surprise that a position seemingly so well maintained, should not have been more obvious) and should have been left unnoticed in other con troversies upon the same subject matter. I think it will turn out, upon examination of principles and authorities, that this late recurrence to a ground so entirely sufficient to maintain the title of the demandant, if well founded, was not owing to want of sagacity or research, but to a sort of intuitive knowledge which a well read lawyer will often have of principles, which is sometimes afterwards in a measure obscured by looking into authorities with a view to maintain the other side of the proposition.
The whole argument of the demandant rests upon the position, that the deeds from Somes to Skinner were absolutely void, so that no estate or interest in the land passed by them, but that they are to be considered by the law as nullities. If this position is established, the inference drawn from it, that Skinner had nothing to convey and therefore nothing passed by his deeds to the tenant, is just and necessary. For it seems to be allowed in the course of the argument, that if Skinner became seised of the tenements by virtue of his deeds from Somes and his possession under them, (the legal notoriety by the records existing,) a bond fide purchaser for a valuable consideration, ignorant of any defect in Skinner’s title, could not be disturbed in his estate.
This admission is certainly correct, for there could be no security of titles, if a purchaser from one actually seised and possessed, with an apparently lawful title existing on the public records, he having no knowledge of a concealed defect in the title of his grantor, should be liable to be defeated of his title by proof of fraudulent acts of his immediate or remote grantor, of the existence of which he had not even a suspicion ; and if the principle on which the argument is founded is true, the purchaser would, at least fcir forty years, hold an estate defeasible by the oral proof of facts to which *202 he was neither a party nor privy, transacted by some anteri- or parties to the title ; perhaps after twenty or more conveyances, all appearing unimpeachable on the records. If such a state of things can be supposed to exist, the legislative power of correcting mischiefs would be loudly called for. We are however well satisfied that the law wants no other aid in this respect, than a discreet examination of its principles, and a sound construction of the cases to which they have been applied.
The position to be maintained by the demandant is, that a deed made by a man, who is allowed by the law to be a free agent and to have the control over his property, so that a deed made by him, if he were dealt fairly with, would be valid, is void, if by means of circumvention, misrepresentation or fraud he has been drawn in to make such deed ; he being on account of the degree of his intellect more liable to be imposed upon -than men in general. I state the question thus, because it is admitted that Somes was not, and never has been, treated as non compos mentis, but was suffered to manage his property, and that his deed would be good, but for the fraud practised upon him.[1]
That his deed to the party practising the fraud may be considered void, in relation to that party, need not be denied. A decision of the Court on such a deed has already settled that point.* * But it was not necessary, in order to come to that decision, to hold the deed a nullity; it was sufficient to show that the grantor had a right, by proving the fraud, to avoid it against the grantee. It was voidable undoubtedly, by the principles of equity adopted and practised upon in our court of common law. Such a case as this in England would probably have afforded cause for setting aside the deed in chancery, and it was upon this ground, and because we had no chancery jurisdiction adequate to the ob *203 ject, that the principle was allowed to operate in the common law suit between Somes and Skinner. Between the grantor and grantee in such cases, the technical difference between void and voidable is wholly immaterial. Whatever may be avoided may, in good sense, to this purpose, be called void, and this use of the term void is not uncommon :n the language of statutes and of courts. But in regard to the consequences to third persons the distinction is highly important, because nothing can be founded upon a deed which is absolutely void ; whereas from those which are only voidable fair titles may flow. These terms have not always been used with nice discrimination ; indeed in some books there is a great want of precision in the use of them. For the purpose of this case, however, the term void will be used to express that which is in its very creation wholly without effect, an absolute nullity ; and voidable, where the instrument or act in its creation has an effect to transfer something, but which may be defeated by the person making it, by showing an inherent vice or defect in the transaction.
With this explanation of terms we think it may be made to appear by reasoning, as well as by authority, that the deeds from Somes to Skinner were not void, but only voidable ; that they passed an estate of which Skinner became legally seised, defeasible in his hands, but not in the hands of an innocent bona fide purchaser under him ; and so, of course, that the demandant is lawfully barred of his right to recover. And it may also be made to appear that this conclusion of law is equitable, and consistent with sound policy.
The authorities cited by the demandant’s counsel will be first commented upon, in order to show that there is no one of them which maintains the ground contended for; and especially, that there is not a single case, at law or equity, where a bond fide purchaser has been deprived of his title by the proof of fraud practised by his grantor upon the person of whom he purchased ; unless it be the case cited from 1 Conn. Rep. 527, which will be particularly attended to
The first authority cited is Fermor’s case, 3 Co. 77. This case was in chancery, but the opinion of common law judges *204 was asked for by the chancellor. The general principle settled in the case is, that fraud vitiates all transactions, even those of a court of record ; and this general principle no lawyer will deny. The plaintiff Fermor being seised in fee simple of the manor of Somerton, demised a messuage, parcel of the same, to one Smith for twenty-one years. Smith held other parcels of land in the same manor at the will of the plaintiff, and other parcels by copy of court roll; he was also seised in fee of' other lands in the town of Somerton, which were his own inheritance. He made a lease of the house and all the land which he held for years, at will, and by copy,, to one Chappel for life, and then by covin with Chappel levied a fine with proclamations of all the lands, as well those which he held o'f the plaintiff as his own inheritance. Chappel died, the twenty-one years expired, and Smith claimed the lands as an estate in fee simple against Fermor, by virtue of the fine with proclamations and five years passed, under St. 4 Hen. 7, c. 24, which in its terms makes such proceedings conclusive against the claims of every one. All the judges of England were consulted in this case, and their advice to the chancellor was, that this fraudulent abuse of the law should not stand against the title of Fermor to bar him of his inheritance. This would be considered a simple case now, for it could not be imagined that a process of any court, founded in fraud, would be a successful covering to such a gross abuse of law and justice. The process was against the very contriver of and actor in the fraud, and yet it was thought necessary to assemble all the judges of England to assist the chancellor in breaking through the toils.
Nothing more can be inferred from this case, than that the title acquired by the fine and proclamations was voidable ; or even if it were held void, it would only be a misapplication of that term and would not meet this case, because there was no act of the party defrauded which tended to give an appearance of estate in the fraudulent party. His possession of an estate for years was lawful by prior title, and it was by reason of that very possession, he continuing to pay rent as before, that he was able to blind the eyes of *205 the victim of his fraud. There is much of the reasoning of the judges in the case which looks as if a different opinion would have been held, if the bill had been against a bond fide purchaser without notice, though as the case did not require it, nothing decisive was said upon that point.
The citation from Jenkins’s Centuries, 254, is only a brief statement of the above case from Coke, and the doctrine is not extended farther.
The case of Bates v. Graves, 2 Ves. jun. 287, is cited only for the expressions of the lord chancellor. It was an application to chancery to set aside a deed alleged to have been obtained by fraud and imposition. The lord chancellor says, “ I doubt, whether in these cases, where the estate passed by the deed decreed to be delivered up, you want a reconveyance. When the court has declared a deed to be set aside for fraud and imposition, I must suppose it wou.d be equally set aside at law upon pleading to it. In that case, I apprehend no estate passes. It is otherwise, if the estate has been conveyed to a third person as an instrument not privy to the fraud ; or if the deed is set aside upon paying so much money ; there, till payment, the estate remains.” p. 294. He says also, “ It is true, that where there is a con veyance of an estate, and possession is retained towards all third parties, the person, to whom it is conveyed, will not be allowed to be considered as owner, nor will the ownership be divested ; but it is not upon that principle the court interferes, where the deeds are set aside between the parties themselves, and the person claiming as heir from the parly who conveyed. That must be upon the ground of imposition ; and the retaining is only an evidence of fraud, which shows, he must be imposed on ; and the circumstance of weakness of capacity proved in any reasonable degree being added, that is sufficient to overturn the deeds upon ground of actual fraud.” p. 292.
The foregoing case is certainly not very intelligible. I can gather nothing from it, but that where a deed is obtained from a party by a fraud practised upon him, and he or his neirs would avoid k on that ground, there must be relief in 'hancery, because the estate passed by the deed, and it is *206 only by showing the extrinsic circumstances in chancery that the grantor or his heir can have any relief. In this case ‘ before the chancellor the party to the fraud uias the defendant in the suit.
Buller’s N. P. 172, is cited, to show that a deed obtained from one who was made so intoxicated that he did not know what he was about, was void, and that the fact may be shown on the plea of non est factum.[1] **4**This proceeds upon the utter incapacity of the party to bind himself by any act ; and the same authority states, that if the deed be only voidable, the defendant shall not avoid it or take any advantage of it on the plea of non est factum, as that the obligee was an infant, or that it was obtained by duress.
In the case cited from 4 Johns. R. 598, (Sands v. Codwise,) there are some expressions, which, if correctly used, give some countenance to the doctrine contended for ; but, considering them as applicable to the case then under consideration, they were proper in themselves, and do not necessarily impugn what we consider to be the true doctrine. It was a bill in chancery by the creditors of Comfort Sands, against him and sundry other persons who held estates by conveyances from him, deemed fraudulent as against creditors ; and upon the claim of the grantees, that the deeds should stand as security for moneys and expenses actually paid and advanced by them on account of the estates, this *207 application was refused on the ground of ac.ual fraud ; in which case, by the rules of equity, there is no relief for the parties ; and the distinction is taken between actual and constructive fraud, in the former, no relief being given, and in the latter, provision being made for the grantees for the moneys actually advanced. Mr. Chief Justice Kent, in order to maintain this distinction, says, “ On the ground of absolute fraud, the deeds were void to all intents and purposes.— A fraudulent conveyance is no conveyance, as against the interest intended to be defrauded.—It is impossible that those deeds can be permitted to stand as a security, if they are to be adjudged void ab initio.—I presume there is no instance to be met with of any reimbursement or indemnity afforded by a. court of chancery to a particeps criminis, in a case of positive fraud.” This, in relation to the subject matter, is all right. As it respected the creditors of Sands the deeds were to all intents and purposes void db initio. And yet to some other purposes they were no doubt valid, for they certainly passed the estate to the grantees, so tnat none but the creditors could defeat their title. These dicta therefore prove nothing in the question before us.
The case cited from 1 Burr. 396, (Bright v. Eynon,) is of itself nothing to the present question, if it was ruled that a discharge for money due, which was either forged or obtained by fraud and imposition, should not avail the party who forged it or was guilty of the fraud. It was probably cited on account of the reference in it to the case of Wyndham v. Chetwynd, in which, on proof of fraud and imposition upon a testatrix, the jury were directed to find non devisavit. But the mere form of the issue allowed in that case, between the party practising and the party suffering by the fraud, cannot be considered as settling, even by implication, the doctrine upon which the present suit is attempted to be maintained.
Upon the most careful examination of the foregoing cases, which were all that were cited by the demandant’s counsel that appear to have a bearing on this question, I do not perceive that, in any instance, a deed of a party competent to c ontract has been deemed void or a nullity on account of its *208 being obtained from him by the fraud or imposition of the grantee. On the contrary, it seems to me that it may be inferred from all of them, that such a deed passes the estate, and is only voidable by showing under a special plea the circumstances which go to defeat it. These circumstances cannot he given in evidence on the plea of non est factum. And it seems to be usual in England to apply to the court of chancery for relief, which is given by setting aside the deed and ordering a reconveyance, which, however, may not be necessary where the deed is set aside ; for the decree of the court makes it a nullity, although it had effect as a deed before.
A brief examination of the authorities cited on the other side, with others which have been looked into by the Court, will very clearly show that a deed made under the circumstances which are shown in the present case, is not a nullity, but that it is effectual to pass the estate, and that it remains valid until defeated by the grantor or those xvho have the right under him ; so that a conveyance from the fraudulent grantee to a third person without notice, for a valuable consideration, will vest an indefeasible title in such second purchaser. This has been the received doctrine from the ear liest times, not only in this country and in England, but also in those countries which act upon the civil laxv as an authoritative code.
The distinction between void and voidable acts, as laid down in Perkins, § 12, 14, though applied by him to the acts of infants, is founded in good sense and sound principle, and may be considered the essence of the doctrine as it has been applied to modern cases, where a question has arisen upon the validity of deeds or other acts of parties.
The position is, that all such gifts, grants or deeds made by infants, which do not take effect by delivery of nis hand, are void ; but such as do take effect by delivery of his hand, are voidable only. Thus, a feoffment with livery of seisin by an infant passes the estate to the feoffee, voidable by the infant either before or after he comes of age, but a power of attorney by an infant to another to make livery for him is void. The first takes effect by delivery, the second conveys *209 no interest and is not intended to take effect until some act is done afterwards ty the attorney.
The reason of this distinction is, that by a feoffment with livery, or by a gift of a thing in hand, the feoffee or donee has acquired every appearance of ownership, and shall not be deprived of the thing granted, unless the defect in his title is shown and proved in court. Whereas by an executory contract there is not this perfect appearance of right; so that when any one would set up such a contract, the party appearing to be bound by it may treat it as a nullity. And in the case of Zouch v. Parsons, 3 Burr. 1794, Lord Mansfield recognises this doctrine, and puts a deed of bargain and sale upon the footing of a feoffment, it passing an estate by delivery of the hand; and the identity is more complete with us, where a deed made in proper form and duly acknowledged and recorded is to all intents and purposes equivalent to a feoffment with livery of seisin.[1] Lit. § 259.
An infant cannot plead non est factum and give infancy in evidence, but must set forth his incapacity in a special plea ; which is not the case with femes couvertes, whose deeds are absolutely null and void.
And this same doctrine is applicable to the case of a deed obtained by duress, which is only voidable and must be avoided by special plea, and not on non est factum. Bull. N. P. 172.
That the same doctrine has not been expressly laid down in English books, in regard to deeds obtained by fraud, can be only because cases of the kind are almost entirely made subject to chancery jurisdiction. Chitty, in his forms of pleadings, however, must be considered as governing himself by the same principle. 2 Chit. Pl. 464. And in Bac. Abr. tit. Void &c., E, it is stated that the delivery of a deed cannot be void, but is only voidable, so that deeds which *210 take effect by delivery can be only voidable, while those which do not so take effect are absolutely void. This is in relation to infants, and is the doctrine from Perkins in different words. In the only case to be found in our own Reports, in relation to the effect of fraud upon deeds, (Bliss v. Thompson, 4 Mass. R. 492,) Chief Justice Parsons, with his usual accuracy and precision, says, “ It is generally true that a man shall not be received to aver against his own deed. But the case of fraud is always excepted, which vitiates every transaction ; and a deed obtained by fraud is to be considered as a void contract as to the fraudulent party.” This I believe is the substance of the law upon the subject, compressed into a very narrow compass ; and it agrees with the commonly received notions of the law in this country. And it is upon this principle, that deeds made to defraud or delay creditors, which by the common law, as well as by the statute of Elizabeth, are void as against such creditors, are nevertheless good between the grantor and grantee and per sons claiming under them, other than creditors, and will support a title in a purchaser of such fraudulent grantee, for valuable consideration, without notice.[1]
This has always been understood to be the law in regard to fraudulent conveyances, both of real and personal estate, in this commonwealth, as well as in England, and it seems never to have been questioned until in a late case in Connecticut, (Preston v. Crofut, 1 Connect. R. 527, note,) in which the absolute nullity of deeds fraudulent against creditors, even as against a bond fide purchaser from the fraudulent grantee without notice, is maintained by a majority of the judges. Great weight should be attached to the opinion of such men as composed that court, and the more, as their opinion is unequivocally approved of and sanctioned by Mr. Chancellor Kent of New York. Still, as their decision runs counter to all our practical notions and to many judicial decisions in this State ; as it was combated with great force *211 by a very eminent member of the Connecticut bench ; and as the decree of the chancellor of New York was reversed in the Court of Errors, conformably to the opinion of the common law judges of that State ; we cannot think it will be adopted beyond the jurisdiction of Connecticut.[2]
The point was settled in this State in 1793, in Essex county, in a case of Goodale, Admr. of Hooper, v. Nichols, and again, in 1808, before Parsons C. J., in the case of Sutton v. Lord, in the same county. 1 Dane’s Abr. 631. It is true, there is not a strict analogy between the case of sales made to defraud creditors, and a deed obtained from the grantor by fraud, for in the first case the grantor freely parts with his land, and therefore cannot himself deny the effect of his deed, or say that nothing passed by it;* [1] but these cases show, that for the protection of innocent purchasers, a title originally defective may be purged of the defect by a sub sequent conveyance.
The principle laid down by Perkins, in relation to the deed of an infant, is applicable, in the reason on which it is founded, to deeds of adult persons which may be obtained from them by fraud. The true reason why a deed from an infant which takes effect by delivery is not a nullity, is, I presume, because it is not an executory, but an executed contract, vesting the possession and apparent right of property in the grantee;[2] and this is the case, in a great degree, *212 with a deed obtained by fraud, and especially if possession of the thing granted accompanies or is followed by the deed ; and there is an act of the party which may be considered as a consent, though there were causes and motives inducing the consent, which may authorize the grantor to retract it, provided that in so doing he does no injury to an innocent person, who is led to pay his money for the very title he has thus consented to part with.
Pothier, in his treatise on obligations, says, when a party has been drawn into a contract by the fraud of another, the contract is not absolutely and essentially null, because a consent, although obtained by surprise, is nevertheless a consent ; but the contract is vicious, and the party who has been surprised, may cause it to be rescinded, because it is against the good faith, which ought to regulate contracts. Poth. on Oblig. Pt. 1, c. 1, § 1, art. 3, no. 29.
Brown, in his treatise on sales, states the Scotch law to be the same in regard to fraud. He says, “ it is now admitted on all hands, that a sale which has been brought about by the fraud of one of the parties, is not absolutely and essentially null, because consent has truly been given, although unlawful means have been used to obtain it ; that by such consent, the' contract is perfected in the first instance, and when delivery follows, the property of the thing sold is transferred to the vendee ; and that although in a question between the vendor and vendee, such a contract may be *213 set aside, and restitution given on the head of fraud, yet until the contract is so set aside, the vendee, having the property of the subject vested in him by delivery, upon a habile [defeasible] title, is able to transfer the property to another; and therefore a second sale, made by him to a bond fide purchaser, will be effectual, and his fraud cannot be made to affect the tide of such a purchaser.” Brown on Sales, 396. This doctrine is repeated in several places in the same book, and is applied by the law of Scotland to the case of duress, as well as that of fraud. The writer is treating of the sale of movables only, but the same principle is applicable to real estate.[1] The grand distinction taken, is between the case of a sale by consent of the vendor, though unlawfully obtained, and an apparent sale by means of violence, such as theft or forgery, in which case there is no consent of any kind ; and it is held, that a sale resulting from the act and consent of the vendor conveys a title, which is defeasible only while the thing remains in the hands of the vendee.
The English law is undoubtedly the same, though as such cases are generally disposed of in chancery, there are not many decisions to be found in the reports of the common law cases.
The case of Parker v. Patrick, 5 T. R. 175, goes the whole length of the Scotch law as laid down by Brown. The goods of the defendant were obtained from him by fraud, and were pawned to the plaintiff without notice. The defendant prosecuted the offender to conviction and got possession of his own goods again. The plaintiff brought trover and recovered. It was objected that there was no difference between felony and fraud, and that the defendant’s title could not be affected by either ; but the court held that there was a difference, and that as these goods were not obtained by a felony, the pawnee’s right to them was lawfully acquired. That the same principle would be applied to real property, is proved by a case put by Chief *214 Baron Gilbert, in his History and Practice of the High Court of Chancery, p. 287. It is stated thus ; “ If B obtains a conveyance of land from A by fraud, and A quits the possession to B, and B sells the land to C for valuable consider ation, bona fide, and without notice, A can never obtain the land against C, because the fraudulent conveyance with the quitting the possession transfers the interest, and then, when C has obtained an interest at law for his money bond fide, a court of equity ought not to take it from him.” This case is decisive, if law ; and it comes from a book of approved authority.
The same doctrine is forcibly expressed by Marshall C. J., in the opinion of the Supreme Court of the United States delivered by him in the case of Fletcher v. Peck, 6 Cranch, 133. He says, “ If a suit be brought to set aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside, as between the parties ; but the rights of third persons, who are purchasers without notice, for a valuable consideration, cannot be disregarded. Titles, which, according to every legal test, are perfect, are acquired with that confidence which is inspired by the opinion that the purchaser is safe. If there be any concealed defect, arising from the conduct of those who had held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him. He has paid his money for a title good at law, he is innocent, whatever may be the guilt of others, and equity will not subject him to the penalties attached to that guilt. All titles would he insecure, and the intercourse between man and man would be very seriously obstructed, if this principle were overturned.”[1]
The ground of these decisions is the same in relation to real and personal estate. It is, that the delivery of the thing by the owner to one who has also the evidence of ownership by the act of the party transferring, gives such an ap *215 pearance of property to the party in possession, that the purchaser under him shall not be disturbed by the antecedent fraud. In this commonwealth the transfer of the property is complete by the registry of the deed ; that is " substitute for livery of seisin, and gives all the notoriety which is required by the law ; but in the case before us there was actual possession by the fraudulent grantee, under the deed to him, so that the case is brought in form, as well as principle, within the cases cited.
Now it is said, that it is contrary to a fundamental principle of property, that the owner shall be devested of it without his consent. The answer is, that in this case he has consented ; and though this consent was unfairly obtained, so that he may vacate the contract against the party who procured it, yet the policy of law and the security of innocent purchasers, who confide in the lawful evidence of property in the party of whom they purchase, and particularly in his having actual possession, accompanied with the legal proofs of property under the seal of the former owner, require that titles thus obtained should not be disturbed. Nor is it inequitable, or incongruous with the rules of law applied to other cases of misfortune in relation to property. It is a general and just rule, that when a loss has happened which must fall on one of two innocent persons, it shall be borne by him who is the occasion of the loss, even without any positive fault committed by him, but more especially if there has been any carelessness on his part which caused or contributed to the misfortune. A man can scarcely be cheated out of his property, especially of real estate, in such manner as to give an innocent purchaser a right to hold according to the principles which have been mentioned, without a degree of negligence on his part which should remove all ground of complaint. Suppose him to be prevailed upon by fraudulent representations, to execute a deed, without asking advice of friends or counsel; he has locus penitential when he goes before a magistrate to acknowledge it. He then may refuse to deliver possession and put the party, who has cozened him, to proof of his title. If, however, he has acknowledged the deed and given possession, he ought to *216 counteract the notoriety of the acts and of the registry, by giving public notice of defect of title in the occupant, so that no one could purchase without being fixed with a presumption of notice which would affect him with the fraud and vitiate his title. How different has been the conduct in the present case. A deed is executed with all due formalities, is acknowledged and delivered and suffered to be recorded without any objection. With .respect to the mortgaged land, the fraudulent assignee is allowed, four months after the assignment, to enter openly and peaceably and take possession for condition broken. This could not be done without a public and notorious act. And the assignee holds possession until he sells to the tenant. In regard to the other parcel of land, the same grantee entered immediately on delivery of the deed, and received the rents and profits more than two years before he sold to the tenant ; and the demandant himself has never signified any dissent to these proceedings. Now what answer can be given to this strong ground of equity in favor of the tenant, who has thus been permitted, nay, lured to part with his money for the title to these estates ? The only one which can be suggested is, that the demandant is a man of humble capacity, that he was under the influence of the person to whom he first parted with his land. These facts he can avail himself of, and he has done it in regard to some of his property, against the man who imposed upon him ; but he ought not, being a competent agent in law, and having the dominion and control of his property during all these transactions, to be allowed, or his guardian for him, to reclaim estate thus fairly, and, we think, lawfully acquired. There would be no safety in deeds, records or any other evidence of property, if this were allowed.
The same remarks are applicable to a deed obtained by duress, which differs but little in its character and effects from fraud. Suppose a man, unlawfully imprisoned and menaced with bodily harm, should, to procure his liberty, make a deed of his property ; the next day should go before a magistrate and acknowledge his deed ; should suffer the grantee to take possession of his estate and keep it two *217 years, having put his deed upon record, no force or restraint being upon him all this time ; giving no notice that he had been coerced ; should then see the man who had thus obtained his deed, bargain and sell the same land to another, for its value, this person being wholly ignorant of the means by which the deed had been obtained ; — can it be possible he should be allowed to take advantage of this concealed defect, to avoid the title of the innocent purchaser ?
The case of a forged deed set up as the basis of a title, or the deed of an unlettered person to whom it was not read or was read wrong by fraud, may be different in principle from the case we have been considering, the law perhaps deeming acts like these as having no effect at all upon the rights of the parties.[1] 2But the man who voluntarily signs and seals a deed, knowing its contents, though cheated into the act, may choose nevertheless to let the deed stand; and if he does until an honest purchaser, confiding in his act, and who is never apprized by him of any defect, pays his price and enters into possession, all the principles of justice forbid him from avoiding the title.[2]
Note. — The action was continued until the following November term, when a verdict was taken, and judgment entered thereon, for the tenant.[3]

 The deed of a person non compos mentis, not under guardianship, is not absolutely void, but voidable merely, and conveys a seisin to the grantee. But if the person non compos mentis be under guardianship, his deed is abso iutely void. Wait v. Maxwell, 5 Pick. 217; see Webster v. Woodford, 3 Day 100; Somes v. Skinner, 16 Mass. R. 348.

 Vide Somes v. Skinner, 16 Mass. R. 348.

 But drunkenness is not of itself sufficient to set aside an agreement, unless some unfair advantage be taken of it. Johnson v. Medlicott, 3 P. Wms. 130, n. (A.); Cory v. Cory, 1 Ves. sen. 19. See Reinicker v. Smith, 2 Harr. & Johns. 421; Duncan v. M‘Cullough, 4 Serg. & R. 484; Wigglesworth v. Steers, 1 Hen. & Munf. 70 ; King v. Bryant, 2 Hayw. 394 ; Curtis v. Hall, 1 Southard, 361; Dorr v. Munsell, 13 Johns. R. 430; Rutherford v. Ruff, 4 Desaus. 364; Burroughs v. Rickman, 1 Green, 233. So under the plea of non est factum, fraud may be given in evidence, if it was sufficiently gross to prove the want of any real assent to the deed, in the mind of the person signing it: as that a different instrument was substituted for the one the party supposed he was signing, or a deed was falsely read to a man blind oi unable to read. Van Valkenburg v. Rouk, 12 Johns. R. 337; Jackson v. Hayner, id. 469; Armstrong v. Hall, 1 Coxe’s (N. Jer.) R. 178; 2 Roll. Ab 28, pl. 8; Finch’s Law, 109; Moore v. Parker, Cam. & Norw. 553; Edwards v. Brown, 1 Tyrwhitt’s Ex. R. 182; S. C. 1 Crompt. & Jerv. 307 Union Bank of Maryland v. Ridgely, 4 Harr. & Gill, 324; Martin v. Knowllys 8 T R. 146.

 An infant in New Hampshire, who had conveyed his estate by deed, was held not to have parted with the possession of it, so that he could not maintain trespass against his grantee for damage done to the estate, although the infant had not entered to avoid the effect of his deed. The court said he might treat his deed as absolutely void. Dearborn v. Eastman, 4 N. Hamp. R. 441.

 In this last case, though, the creditors cannot take the estate from the hands of the bond fide purchaser, yet they will be permitted to enforce their claim against the proceeds of it in the hands of the fraudulent grantee. See Bean v. Smith, 2 Mason, 274, 275.

 A contrary doctrine had been held in that State. Lee v. Abbe, 2 Root, 359, Sturges J. and Mitchell J. dissenting.

 It is held in many cases, that though the grantor himself in such case would not be permitted in a court of law or of equity to avoid the fraudulent conveyance, yet where he has continued in possession, his subsequent grantee for a valuable consideration may avoid it; Gooch's case, 5 Co. 61; Wadsworth v. Havens, 3 Wend. 411; Sterry v. Arden, 1 Johns. Ch. R. 261; Doe v. Manning, 9 East, 59. See Cathcart v. Robinson, 5 Peters, 280; Benton v. Jones, 8 Conn. R. 186; especially if the subsequent grantee had no notice of the former fraudulent conveyance. Tate v. Liggat, 2 Leigh, 84.

 The grantor, who has been defrauded of his estate, has the power of indemnifying himself by proceeding for the fraud against the fraudulent grantee, though the estate has passed out of his hands. But the law which holds out to infants the privileges of infancy, intends them protection not only in cases where they have been actually defrauded, but also in those where they have received an adequate consideration for their contract, and *212 yet are desirous of rescinding it when coming of age, on repaying the con sideration money. Badger v. Phinney, 15 Mass. R. 359; Roberts v. Wiggin, 1 N. Hamp. R. 73; Roof v. Stafford, 7 Cowen, 179. There is not necessarily any fraud in purchasing an estate of a minor and selling it again, though the minor may be greatly injured by his conveyance. Hence in such case, where there is no evidence of actual fraud, the minor must content himself with what he has obtained for his estate, however inadequate, and with the knowledge that the law offers him protection without giving him the power of obtaining it, unless he can claim his estate in the hands even of a bond fide purchaser of his grantee. Would there not be more reason, in such case, in throwing the bond fide purchaser on the protection of the warranty of his grantor, than in thus depriving the infant of all aid against his improvident acts? See Dearborn v. Eastman, 4 N. Hamp. R. 441 ; Yancey v. Hopkins 1 Munf. 419.

 Rowley v. Bigelow, 12 Pick 313; Dexter v. Harris, 2 Mason, 531; Bean v. Smith, 2 Mason, 252.

 See also Mowrey v. Walsh, 8 Cowen, 238 ; Rowley v. Bigelow, 12 Pick. 312 ; Smith v. Dennie, 6 Pick. 266 ; Hussey v. Thornton, 4 Mass. R. 407; Thurston v. M‘Kowm, 6 Mass. R. 429 ; Sid. 134 ; Haggerty v. Palmer, 6 Johns. Ch. R. 438 ; Seaver v. Dingley, 4 Greenl. 306 ; Gilbert v. Hudson, ibid. 345

 See ante, 194, n. (1).

 See Whelan v. Whelan, 3 Cowen, 537, in which a deed fraudulently obtained for a grossly inadequate consideration, was set aside, though innocent third persons were adversely affected by it. See also Bennet v Wade, 1 Dickens, 84; Davidson v. Russell, 2 Dickens, 761; Huguenin v. Baseley, 14 Ves jun. 289; Wilm. 64. But see Prince v. Shepard, 9 Pick. 176. Whether the principle of the case Somes v. Brewer is applicable, when the subsequent purchaser takes the estate in security or in discharge of an antecedent debt, quaere. See Jackson v. Myers, 11 Wendell, 538; Dickerson v. Tillinghast, 4 Paige, 215. A purchaser with notice from a purchaser without notice, may protect himself by the want of notice in his vendor. Hagthorp v. Hook, 1 Gill & Johns. 270.

 See a learned exposition of the protection afforded a bond, fide purchaser of a fraudulent grantee, in Bean v. Smith, 2 Mason, 252