## Roland G. Hazard *versus* John Irwin *et al.*

In an action on a contract under seal, in which one of the contracting parties is seeking to enforce the contract against the other, the defendant may plead that the contract was obtained by fraud and imposition.

In an action on a contract under seal, whereby the defendants became sureties that one P. should perform his contract with the plaintiff, which likewise was under seal, it was *held*, that the defendants might plead that P's contract was voidable by reason of fraud and imposition, and that P. in consequence rescinded it.

Where the declaration averred that the plaintiff, by a contract under seal, sold and conveyed a steam engine to P., and that he gave P. an order for the engine, and that the defendants, by an instrument under seal, became sureties for the payment of the debt due by P., and the defendants pleaded that the plaintiff falsely and fraudulently made representations as to the engine, by reason whereof the contract of sale was void and P. refused to perform the same, wherefore the instrument executed by the defendants was void, it was *held*, that as it did not appear by the record that the engine had been delivered to P., the plea was good, especially after verdict, although it did not aver that the engine, or the order for its delivery, had been returned to the plaintiff.

*Held* also, that the defendants' contract, whereby they became sureties " for the payment of the debt due by P.," did not estop them from showing that the contract of sale was voidable and avoided, so that no debt was due from P. to the plaintiff.

The averment in the defendants' plea, that the plaintiff falsely and fraudulently made certain representations respecting the steam engine, and that by reason thereof the contract between P. and the plaintiff was void and P refused to perform it, was considered, after verdict, as equivalent to an averment that P. had rescinded the contract.

It appeared that the plaintiff falsely and fraudulently represented to P. that the engine was a twenty-horse power engine ; that it was fit for mining purposes ; that it was in good order and had been so certified by engineers ; that it was free from rust ; that it had been standing but two or three years. It was *held*, that these false representations related to matters of fact and not of opinion ; and that as they were material to the interests of P., and had a tendency to prevent him from inquiring into the condition of the engine, and as he reposed confidence in them, they rendered the contract of sale voidable by him.

*Held* also, that P. was a competent witness for the defendants to prove such misrepresentations, he not being liable to the defendants for the costs of the action against them.

If, upon a sale, the vendor makes material representations of matters of fact, as of his own knowledge, to be true, and they are in fact untrue, and the vendee is de ceived thereby, the sale will be voidable, although the vendor did not know whether they were true or not.

THIS was an action of covenant. The declaration recited, that by a certain contract under seal, dated the 16th of March, 1833, and made by and between the plaintiff and one John Penman, the plaintiff sold and conveyed to Penman a certain steam engine with its appurtenances, at the rate of eight cents per pound for all the metal therein, and Penman covenanted to pay a portion of the purchase money, amounting to the sum of $ 500, on the 27th of the same month, and the residue in three, six and nine months from the date of the contract, and to give satisfactory security for the payment of such residue ; that the plaintiff further covenanted, that, upon receiving the sum of $ 500, and such security, he would give Penman an order for the engine &c., as it then stood in a building near the Santee River in South Carolina ; that on the 2d of April, 1833, Penman paid the plaintiff the sum of $ 500, and, as security for the residue of the purchase money, executed and delivered to William Morrison, a conveyance in trust, of a gold mine situate in North Carolina, the deed being dated the 4th of April, 1833 ; that this deed recited the contract made between Penman and the plaintiff, and empowered Morrison, in case Penman failed to pay the residue of the purchase money when the same became due, to sell the mine and apply the proceeds to the payment thereof ; that the plaintiff then gave Penman an order for the engine ; and that on the 20th of April, 1833, after the deed in trust was delivered by Penman to Morrison, but before it was recorded, the defendants executed and delivered to the plaintiff a contract under seal, which was the subject of this action.

This contract was written on the back of a copy of the trust deed, and was as follows : " State of North Carolina, Mecklenburg County. For and in consideration of the sum of five dollars to us in hand paid by R. G. Hazard, and for the further consideration of W. Morrison, trustee, having agreed not to have the within trust deed recorded or registered, we do

ereby acknowledge ourselves as sureties unto the said R. G. Hazard, for the payment of the debt due by said John Penman as recited in the within deed of trust. Given under our hands and seals, this 20th day of April, A. D. 1833."

The declaration further averred, that the price of the engine, determined according to the provisions of the contract of sale, amounted to the sum of $3,753·20 ; that the plaintiff performed all the covenants on his part to be performed by the terms of the contract between him and Penman ; that when the instalments of the purchase money respectively fell due, the plaintiff made a demand on Penman, who refused to pay the same ; and that the same had never been paid by Penman, according to his contract, nor by the defendants or either of them, according to the terms of their contract, but now remained unpaid.

The defendants pleaded several pleas, alleging that the supposed instrument in writing between the plaintiff and Penman, was obtained by fraud and misrepresentation, by the plaintiff's falsely and fraudulently representing, — that the engine was in perfect order, bright and clear of rust ; that it was ready for immediate use, and was a good and perfect engine ; that it was of twenty-horse power ; that engineers had examined it and certified it to be in fine order ; that the same, with the pumps and appurtenances thereto belonging, were fit for mining purposes ; that they weighed about fifteen tons ; that the whole expense, at eight cents a pound, would not exceed two thousand dollars ; that the engine had been standing only two or three years ; that the plaintiff could warrant it with the greatest safety to be in every respect a good engine and in perfect order ; — that the plaintiff knew the representations to be false ; that by means of these false and fraudulent representations Penman was induced to enter into the agreement with the plaintiff, for the performance of which the plaintiff alleges the defendants to be liable as sureties, by reason whereof the instrument made between Penman and the plaintiff, and also that made between Morrison and Penman, were void in law, and Penman refused to perform the same, or to pay any other or further sum of money in the first mentioned instrument provided

Hazard
v.
Irwin.

to be paid ; and that, therefore, the instrument executed by the defendants was void.

The plaintiff replied, that the contract between himself and Penman was honestly and not fraudulently obtained ; and concluded to the country.

At the trial, before *Wilde* J., the defendant offered evidence to prove the allegations in the pleas. This was objected to by the plaintiff, on the ground that it tended to inquire into and impeach the consideration of a sealed instrument ; but the objection was overruled and the evidence admitted.

The defendants also offered in evidence the deposition of Penman, which was objected to by the plaintiff, on the ground that Penman was interested in the event of the suit. But the objection was overruled and the deposition was admitted.

The judge instructed the jury, that the burden of proof was on the defendants to make out the allegations in the pleas ; that in order to find for the defendants, they must be satisfied, beyond a reasonable doubt, that the representations were material and made by the plaintiff to Penman before the contract was executed, that they were false, and that the plaintiff knew that they were false ; that if the plaintiff made the representations, alleging that he knew them, of his own knowledge, to be true, and they were in fact untrue, and material, and Penman was deceived thereby and induced to execute the contract, the contract would be void, though in point of fact the plaintiff did not know whether they were true or not, at the time when they were made ; but that this point was perhaps of little importance, if the jury believed the other evidence in the case ; that Penman was not so interested in the action as to be incompetent as a witness, but that he was interested in the question, and that this interest went only to his credibility, of which the jury were the judges.

The jury returned a verdict for the defendants.

The plaintiff moved for a new trial on the ground of the rulings above stated ; and also for judgment *non obstante veredicto*, on the ground, that the pleas were bad and insufficient in law and the issue immaterial.

*March* 19th.  *Ward* and *Osgood*, for the plaintiff. If this action were brought against Penman on the contract of sale, the facts set

ΰοϰth in the pleas would not be a defence. The alleged mis-representations did not constitute a fraud in law, on the part of the plaintiff. They were mere statements of matters of opinion or judgment ; and in such cases the law requires that the vendee shall judge for himself. There is no allegation of any concealment of latent defects, nor of any positive fraudulent act done on the part of the vendor, to prevent the vendee from examining for himself. *Harvey* v. *Young*, Yelv. 21, note ; *Swett* v. *Colgate*, 20 Johns. R. 196 ; *Sherwood* v. *Salmon*, 2 Day, 128 ; 1 Fi·zh. Nat. Brev. 94 ; Brown on Sales, 407 ; *Pickering* v. *Dowson*, 4 Taunt. 779 ; 2 Kent's Comm. 381 ; *Baglehole* v. *Waters*, 3 Campb. 153. Besides, the contract of sale was reduced to writing, and the misrepresentations not b·iᶇg embodied in it, cannot be given in evidence. *Pickering* v. *Dᴊwson*, 4 Taunt. 779. Penman was to take the engine *as it stood*, which is equivalent to saying, *with all its faults*. It was an admission, that he took the risk and waived all rights he might have had from previous conversations.

But if the alleged misrepresentations did amount to legal fraud, still they could not be pleaded by Penman in a court of law, in bar to an action on the contract of sale, that being an instrument under seal, the consideration of which is not to be inquired into. If a deed be fraudulently misread, or another instrument substituted for that which the party intended to execute, the rule of law is different. *Vrooman* v. *Phelps*, 2 Johns. R. 177 ; *Dorr* v. *Munsell*, 13 Johns. R. 430 ; *Franchot* v. *Leach*, 5 Cowen, 506 ; *Dale* v. *Roosevelt*, 9 Cowen, 307 ; *Case* v. *Boughton*, 11 Wendell, 106 ; *Taylor* v. *King*, 6 Munf. 366 ; *Wyche* v. *Macklin*, 2 Randolph, 426 ; *Stubbs* v. *King*, 14 Serg. & Rawle, 208 ; *Dwight* v. *Pomeroy*, 17 Mass. R. 303 ; 3 Chitty on Pl. 963 ; *Haynes* v. *Maltby*, 3 T. R. 438 ; Com. Dig. (Day's edit.) *Estoppel*, *A* 2, note ; *Collins* v. *Blantern*, 2 Wils. 347 ; *Somes* v. *Brewer*, 2 Pick. 184. Penman himself could not have defended against such an action, unless he had rescinded the contract as soon as he found that the engine did not correspond to the representations, and had returned the order for ts delivery, and given notice to the plaintiff of such rescission ; ᴏut he has not done so. The pleas, it is true, allᴇge that Pen-

man refused to perform his contract with the plaintiff; but that is not rescinding it. 3 Wheeler's Abr. 405; *Connor* v. *Henderson,* 15 Mass. R. 319; *Kimball* v. *Cunningham,* 4 Mass. R. 502; *Norton* v. *Young,* 3 Greenl. 30; *Campbell* v. *Fleming,* 1 Adolph. & Ellis, 40. The omission to set forth that the contract was rescinded, was material, and was not cured by the verdict. *Kingsley* v. *Bill,* 9 Mass. R. 198.

But if Penman could have pleaded these facts in bar to an action against him, these defendants cannot. The contract which is the subject of the present action is a distinct and original undertaking on the part of the defendants; and certainly no fraud has been committed on them. 3 Kent's Comm. 87; *Read* v. *Curtis,* 7 Greenl. 186. If they are original contractors and strangers to Penman, they cannot set up this defence. They are estopped by their deed to deny that nothing was due from Penman to the plaintiff; or, in other words, that the contract of sale was void; and, besides, they received a consideration for their contract. Com. Dig. *Estoppel, A* 2; *Bean* v. *Parker,* 17 Mass. R. 591; *Rainsford* v. *Smith,* 2 Dyer, 196; *Backwell* v. *Bardue,* 1 Mod. 113; *Collins* v. *Rybot,* 1 Esp. R. 157; *Ardern* v. *Rowney,* 5 Esp. R. 254. If Penman was induced to enter into the contract with the plaintiff by fraud, the contract was voidable but not absolutely void, and the property passed; and the defendants, being strangers, cannot avoid it. 7 Bac. Abr. 66, *Void & Voidable; Huscombe* v. *Standing,* Cro. Jac. 187; *Thompson* v. *Lockwood,* 15 Johns. R. 256; *Jackson* v. *Eaton,* 20 Johns. R. 479; *Wait* v. *Maxwell,* 5 Pick. 217; Brown on Sales, 396; *Somes* v. *Brewer,* 2 Pick. 199, cites Pothier on Obl. *pt.* 1, *c.* 1, § 1, *art.* 3, *no.* 29; *Rowley* v. *Bigelow,* 12 Pick. 312; *Fletcher* v. *Stone,* 3 Pick. 250.

The defendants should have restored the plaintiff to the situation in which he stood before the contract in suit was executed. *Daubeny* v. *Cockburn,* 1 Meriv. 643. They should also have alleged, that they were not aware of the fraud in the sale; for if they entered into the contract in suit with full knowledge of such fraud, they would be bound by it

Penman was interested in the event of the suit, and therefore his deposition was improperly admitted in evidence. The

<div style="float:right">Hazard
*v.*
Irwin.</div>

defendants were sureties for him, and they are estopped by their contract to deny that they sustained that relation. 1 Phillipps on Evid. 43 ; *Pierce* v. *Butler*, 14 Mass. R. 303. If the plaintiff should recover of the defendants, they would be entitled to an action against Penman ; and the judgment in the present action would be evidence of the amount paid by them on his account. 1 Phillipps on Evid. 46. The interest of Penman is not equally balanced ; for the defendants, in their action against him, would be entitled to indemnity for the costs of this action. *Riddle* v. *Moss*, 7 Cranch, 206 ; *Hayden* v. *Cabot*, 17 Mass. R. 173; *Leavenworth* v. *Pope*, 6 Pick. 419.

*C. G. Loring* and *Bartlett*, for the defendants, cited to the point, that the deposition of Penman was competent evidence, *Bunter* v. *Tyndale*, 1 Barn. & Cressw. 689 ; *Birt* v. *Kirshaw*, 2 East, 548 ; *Ilderton* v. *Atkinson*, 7 T. R. 481 ; 2 Stark. on Evid. 746 ; that the defendants were *guarantees* and not *sureties*, *Oxford Bank* v. *Haynes*, 8 Pick. 423 ; *Hunt* v. *Adams*, 5 Mass. R. 358 ; that if the judge's charge was erroneous, yet if enough appeared to sustain the verdict, the Court would not grant a new trial, *Nathan* v. *Buckland*, 2 Moore, 156 ; *Horford* v. *Wilson*, 1 Taunt. 12 ; *Train* v. *Collins*, 2 Pick. 145 ; *Estwick* v. *Caillaud*, 5 T. R. 425 ; *Clark* v. *Dutcher*, 9 Cowen, 674 ; that the maxim, *caveat emptor*, does not apply, where the purchaser has no opportunity to examine for himself, or where the representation is made in such manner as to induce him not to examine, Chitty on Contr. 133 ; 2 Kent's Comm. 382 ; as to the effect of misrepresentations where a sale is made *with all faults*, *Shepherd* v. *Kain*, 5 Barn. & Ald. 240 ; *Fletcher* v. *Bowsher*, 2 Stark. R. 561 ; that the rule that fraud cannot be set up in a court of law to avoid an instrument under seal, has been adopted in those states only where there is a distinct court of chancery, but that even there the leaning of courts is against it, *Stevens* v. *Judson*, 4 Wendell, 471 ; *Stubbs* v. *King*, 14 Serg. and Rawle, 206 ; *Bliss* v. *Thompson*, 4 Mass. R. 492 ; *Somes* v. *Skinner*, 16 Mass. R. 348 ; *Somes* v. *Brewer*, 2 Pick. 191 ; and that if there was not a sufficient allegation that the contract was rescinded, the defect was cured by the verdict, *Ward* v. *Bartholomew*, 6 Pick. 409

Hazard
v.
Irwin.

July 2d.

SHAW C. J. delivered the opinion of the Court. Much of the argument on the part of the plaintiff, is founded, we think, on a misapprehension of the force and effect of the plea. The argument is, that whether the defendants, upon the facts shown, are to be deemed either sureties or guarantors, in either character they are strangers to the contract of purchase and sale between the plaintiff and Penman, and cannot by their plea avoid that contract, or avail themselves of any fraud in it. This argument would certainly be very strong, and if the state of the pleas would warrant it, would be entitled to great consideration. Fraud in the terms of a contract of sale, renders it not absolutely void, but voidable at the election of the party defrauded. The rule is designed for his security and protection. If he is desirous to retain the commodity, and carry the contract into effect, although he has been imposed upon and cheated in the terms of it, he undoubtedly has a right so to do. He may be so situated, that although conscious that he has been grossly defrauded, yet so urgent may be his necessity for the immediate use of the article purchased, that he would rather submit to the imposition, than repudiate the contract. In such case, neither the other contracting party nor a stranger, can avoid the contract on that ground.

But we think this argument is not warranted by the pleas ; but the pleas do state, not perhaps in the most precise and formal manner, but with a certainty sufficient after verdict, that the principal, Penman, did repudiate and rescind this contract. The general tenor of the averments in the pleas is, that the plaintiff, falsely and fraudulently, made certain representations, as to the age, condition, weight, power, and other circumstances of the steam engine, and by reason thereof, the contract between the plaintiff and Penman was void, *and,* Penman refused, that is, *and by reason thereof,* or in consequence thereof, Penman refused, &c. The term " refused," though often used with the term " neglected," when it is intended to aver the breach of a contract to pay money, and is properly used in that sense, yet has a more active meaning, and taken in its connexion here, may well mean, not merely a passive non-payment of money, but a refusal on demand, or a determination not to pay, and that determination signified to the party claiming to recover. Whatever must have been the construction of the

plea or demurrer, after verdict we think it is sufficient, and it must be taken that the language was thus understood, consider-ed and applied upon the trial.

The Court are also of opinion, that there was no necessity of making an express averment, that the engine was returned by Penman to the plaintiff, the vendor, because it does not appear by the record, that the engine was ever delivered to the ven-dee, or removed from the custody of the vendor, by the order. The averment of the plaintiff in the declaration, is, that by the contract, the plaintiff sold and conveyed the engine ; and though the execution of the contract of sale, and the delivery of an order to take the engine, might be a good constructive or symbolical delivery to vest the property in the vendee, yet it did not constitute such an actual change of possession and removal of the property into the custody of the vendee, as to render it necessary to aver a return to the custody and posses-sion of the vendor. And for the same reason, it was not ne cessary to aver a return and restoration of the order. The order was merely to be used as a means of obtaining a deliv-ery ; and the averment that the vendee, by reason of the fraud and imposition practised on him, refused to perform and fulfil the contract, and to make any further payment thereon, is equivalent to an averment, that he repudiated and rescinded the contract. This being the case, the order became inoperative and void, and the engine not having been removed from the actual custody of the vendor, it remained subject to his own control.

We are then brought to the material questions in the pres-ent case, whether the matter set forth in the pleas, is sufficient to avoid the defendants' contract. It is argued upon two grounds, first, that the fraud was not such as would enable Penman to avoid his own contract were the action against him ; but, secondly, if otherwise, the defendants cannot take advan tage of it, because they are strangers, because there is no fraud shown in the contract between the plaintiff and them, be-cause they are estopped by their deed, to deny that there was a debt due from Penman to the plaintiff. As to the matter of estoppel, it does not apply, because the stipulation is, that they will stand as sureties for the debt due, as recited in the deed

Hazard
v.
Irwin.

of trust. Estoppels are not to be extended by construction. The deed would estop the defendants, perhaps, from denying the existence of such a contract and deed of trust, but not from showing either that it was voidable, and afterwards avoided, or otherwise invalid from some intrinsic vice, so that no debt was due upon it. Suppose it was discharged by payment, release or other matter subsequent, the defendants would not be estopped from showing it. Repudiating a contract, voidable on the ground of fraud, is matter subsequent precisely of the same character. The effect of the plea therefore is, not that the contract between the plaintiff and defendants is void, on the ground of fraud, but that taking it to be valid and in full force, there is nothing due upon it from the defendants, as sureties, because the original contract between the plaintiff and Penman having been justifiably repudiated by the principal, there is nothing due from him.

The question then recurs, whether the fraudulent misrepresentations set forth in the present case, are such as to warrant Penman, the purchaser of the steam engine, in repudiating and rescinding his contract. We take it to be a well settled rule, that in the case of a false and fraudulent representation by a vendor, in matter of fact, within his own knowledge, or which he affirms to be within his own knowledge, not as to matters of opinion, judgment, probability, or expectation, in a matter essentially affecting the interests of the other party, a matter in which he reposes confidence in such affirmation, and is in fact deceived by it, the party thus deceived may repudiate and rescind the contract at his election ; and if the litigant parties are so situated in regard to the subject matter, that the rule can be practically and effectually applied, it shall avail as well in a court of law, as in a court of equity. Many cases may arise where, in consequence of an execution of the contract, in whole or in part, or by other means, the parties are so situated that by a mere repudiation of the contract, they cannot be placed in *statu quo*, in which case the party injured must seek his redress either in a court of law or court of equity, according to the circumstances of the case, and the nature of the redress sought. Where, however, the party committing the fraud, in an executory contract, is himself seeking to enforce

such contract, proof of the fraud of the nature described, by a party having a right to set it up, is a good defence in an action at law.   In the case of *Bates* v. *Graves*, 2 Ves. jun. 295, it is said by Lord *Loughborough*, upon the question, whether a reconveyance should be directed on setting aside deeds, as fraudulent, that " when the court has declared a deed to be set aside for fraud and imposition, it must suppose it would be equally set aside at law upon pleading it.   In that case, I apprehend no estate passes.   It is otherwise, if the estate has been conveyed to a third person," &c.

But it was contended in the present case, that the misrepresentations relied upon to invalidate the contract of sale, were of matters of judgment, or opinion, or matters of which the parties had equal means of inquiry and knowledge, and that, therefore, there was no such fraudulent misrepresentation as to constitute a fraud in law.   It is undoubtedly true, that it is not every misrepresentation, every false or exaggerated statement, relative to the subject matter of the contract, which renders the sale void.   It must be as to a matter of fact, substantially affecting the interests of the vendee, a matter in which he may be presumed to repose confidence, and one by which he is in fact deceived.   The rule is cautiously stated by Lord *Ellenborough*.   " A seller is unquestionably liable to an action of deceit, if he fraudulently misrepresent the quality of the thing sold to be other than it is, in some particulars, which the buyer has not equal means with himself of knowing, or if he do so in such a manner as to induce the buyer to forbear making the inquiries, which for his own security and advantage, he would otherwise have made."   *Vernon* v. *Keys*, 12 East, 637.

The difference between a false averment in matter of act, and a like falsehood in matter of judgment, opinion and estimate, is well illustrated by very familiar cases in the books.

If the owner of an estate affirm, that it will let or sell for a given sum, when in fact such sum cannot be obtained for it, it is, in its own nature, matter of judgment and estimate, and so the parties must have considered it.   *Harvey* v. *Young*, Yelv 21 ; 1 Rol. Abr. 801, *pl.* 16 ; *Leachins* v. *Chissel*, 1 Sid. 146    But if an owner falsely affirm, that the estate is let for £ 30, when in fact it is let for £ 20, it is fraud, because the

owner knows the fact, and on inquiry, by the vendee, the tenant might refuse to inform him, or give him false information.

In looking at the misrepresentations set forth, and which under the instruction of the Court, in matter of law, must, after verdict be taken to have been proved, we think, they were of matters of fact, not of opinion, that they were material to the interests of the vendee, that they had a tendency to prevent that inquiry and examination into the condition of the engine which the vendee would have otherwise made, and that the vendee reposed confidence in them. Of this character, peculiarly, was the representation as to the age of the machine, and the length of time which it had been in operation, a fact known to the vendor, which could not be known to the vendee, except by the information of others ; and that information might not be obtained, or might not be correct. Of the same character, in a great measure, were the representations, that it was in good order, and fit for immediate use, and had been so certified by engineers ; because in so complex a machine as a steam engine, it cannot be known whether it is in good order and fit for immediate use, by bare inspection, without being taken down, and the interior carefully examined by persons of skill.

It was, however, argued on the part of the plaintiff, that whatever might be the effect of the alleged fraud in defence of a suit on a simple contract, such a fraud is not pleadable in bar of an action on a deed or specialty. Several cases are cited in support of this position, from the decisions of the courts of New York, and the point seems to be there so settled by a series of cases. It is a little remarkable, however, that the original case, which constitutes the commencement of this series, is hardly an authority for the point. *Dorlan* v. *Sammis*, 2 Johns. R. 179, note. The case was debt on bond, for the price of a slave ; the defendant relied on the fact, that the negro was free and not the property of the plaintiff, when he sold her ; a mere failure of consideration, and with no averment of fraudulent representation. The court ask, " can a defendant in a court of law get rid of a bond, given on a sale of a chattel, on the ground of failure of consideration ? There is no allegation that the plaintiff sold the chattel fraudulently and knowing that he

had no title.   There is no case in which a bond can be set
aside, but where the consideration was void in law, or where
theie was fraud."   But it was afterwards ruled, that fraud can-
not be pleaded to a specialty in a court of law, not affecting the
execution of the bond itself ; but these decisions are founded
mainly on the consideration, that a more adequate remedy and
one better adapted at once to discover the fraud, and to relieve
against it, is afforded in equity.   In one of the late cases on
the subject, Chief Justice *Savage* says,  " I confess I can see
no very good reason why this defence should be excluded from
a court of law, and the party sent into a court of equity ; but
so the point has always been decided."   *Stevens* v. *Judson*,
4 Wendell, 473.

But whatever may have been decided elsewhere, we think it
has long been a settled rule in Massachusetts, that such a fraud
as that set forth in this case, is a good defence as well to an
action founded on a deed, as any other ; it is rather acted on
as a settled rule, than discussed and decided in any particular
case.   The cases cited on the argument, are cases in which
the judgment of the Court, upon great consideration, proceed-
ed upon this as a settled rule of law.   *Bliss* v. *Thomson*,
4 Mass. R. 492 ; *Somes* v. *Skinner*, 16 Mass. R. 348 ;
*Somes* v. *Brewer*, 2 Pick. 191.   The second of the above
cases was a real action, involving a question of title, and the
deed, by which the plaintiff conveyed to the defendant, being
shown to have been obtained by imposition and fraud, it was
held that no title passed.

The last of the above cases assumed the same rule to be a
settled rule of law ; but the case was distinguishable in this,
that the first grantee, who obtained the deed from the plaintiff
by fraud and imposition, had conveyed the land to a *bonâ fide*
purchaser without notice, and so it was held, that as against
him the rule did not apply.

The general doctrine was also settled in a case in which the
opinion was given by *Parsons* C. J.   It is directly in point.
It was on covenant, and the defendant pleaded that it was ob-
tained by fraud and imposition, and the defence was held good.
The question as to the relative jurisdiction of courts of law and
equity is there considered.   The learned judge concludes this

Hazard
v.
Irwin.

part of the case thus : " But when a court of law has regularly the fact of fraud admitted or proved, no good reason can be assigned why relief should not be obtained there, although not always in the same way in which it may be obtained in equity." *Boynton* v. *Hubbard,* 7 Mass. R. 119.

The Court are all of opinion, that in an action on a contract, though under seal, in which a party is seeking to enforce a contract against the other contracting party, a plea and proof that such contract was obtained by fraud and imposition, would constitute a good defence at law, and of course, that had this been a suit against Penman, he might have made this defence at law.

A question was made as to the competency of Penman as a witness. The Court are of opinion, that he was a competent witness, that the interest which he had was in the question and subject matter, that he had no interest in the event of the suit If the defendants were to be considered as sureties for Penman, and so that there was a privity between him and them, if the plaintiff were to recover against them, they would have their remedy for a contribution only, and not for the costs, against Penman. It is not, as if they held an indemnity from him against costs as well as debt. If the plaintiff does not recover against the defendants, he is not barred of his action against Penman, and so Penman's interest is balanced. Considering them as guarantors to the plaintiff, upon an independent collateral contract, made on a distinct consideration, and so there being no privity between the defendants and Penman, the result we think would be the same. A recovery by the plaintiff against the defendants would be no bar to an action by the plaintiff against Penman, but such an action could still be sustained by the plaintiff against him, which might, perhaps, enure to the benefit of the defendants ; or the plaintiff might make an equitable assignment of his right of action to the defendants, to recover the amount against Penman, for their own relief and indemnity. In either event Penman has no legal interest in the event of this suit, and whatever objection lies against his testimony, it is to his credit and not to his competency.

Some objections were made to the instructions of the court in point of law, all of which I believe have been substantially

considered, except perhaps this, that if Hazard made the representations, as of his own knowledge, to be true, and they were in fact untrue and material, and Penman was deceived thereby, the contract would be void, although the plaintiff did not know whether they were true or not. The Court are of opinion that this was correct, because in fact such an averment has all the elements and all the consequences of a fraudulent representation. To represent that he knows facts, which he does not know, and which in fact he cannot know, because they are not true, for the purpose of deception, is substantially false, and produces all the ill effects of falsehood.

I am aware that in one case it was held, that where a party affirmed that he knew a thing of his own knowledge, which subsequently turned out not to be true, it was held to be no fraud which would sustain an action. *Haycraft v. Creasy*, 2 East, 92. There was a difference of opinion among the eminent judges who decided that case. It was a case upon which the defendant was charged as having fraudulently recommended a third person as one entitled to credit. He had given the strongest evidence of his own belief, by trusting the same person to a large amount. Those who decided that he was not liable, as upon a fraudulent representation, put it upon the ground, that from the subject matter of the affirmation, that of the ability and solvency of a third person, it could only be a matter of opinion and judgment, and though he said he knew it of his own knowledge, nothing more could be understood, than that he had the strongest belief of, and confidence in the assertion.

But this case is entirely distinguishable, being one, where the subject matter is one of fact, in respect to which a person can have precise and accurate knowledge, and in respect to which, if he speaks as of his own knowledge, and has no such knowledge, his affirmation is essentially false.

*Judgment on the verdict, for the defendants*