## COLEMAN et al. v. UNITED STATES.
### No. 12022.

Circuit Court of Appeals, Fifth Circuit.

May 12, 1948.

James V. Allred, of Houston, Tex., and Ronald Smallwood, of Harlingen, Tex., for appellants.

Brian S. Odem, U. S. Atty., and William R. Eckhardt, Asst. U. S. Atty., both of Houston, Tex., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellants were tried under an indictment containing ten counts, each of which charged the mailing of a particular letter in furtherance of a scheme to defraud in violation of Section 338, Title 18 U.S.C.A. The jury found both guilty on all counts except Count 6, upon which, by agreement, a directed verdict of not guilty was returned.

In 1932, appellants, Negroes, husband and wife, became interested in the care of unfortunate and underprivileged Negro children in the Texas Rio Grande Valley. In 1933, they published in a local paper a letter dealing with the need for an orphans' home and training school for such children. In 1934, appellants incorporated the Valley Orphanage and Vocational Training School, with a charter from the State of Texas. Appellants contributed their own properties and time to the orphanage and for eight years conducted it as best they could with the fruits of their own labor and occasional donations. In 1941, they were approached by one W. F. Pohlen, an advertising man who specialized in conducting fund-raising campaigns for charitable organizations, and as representatives of the orphanage they entered into a two-year contract with Pohlen to conduct a fund-raising campaign by mail. It was at this time that the Government claims that they conceived their scheme to defraud. The campaign conducted by Pohlen brought in a good deal of money, the greater portion of which was received by or paid to Pohlen under his contract. In 1943, appellants contracted with Pohlen to purchase his mailing lists, office machinery, and the equipment used in the preparation of campaign letters, the purchase price to be paid from moneys received as contributions. Pohlen received over $14,000 in payment under this second contract, and, when in March, 1944, the final payment was made to him, all of the equipment, etc., was shipped to the orphanage. From that time on, with the possible exception of the Christmas 1944 letter, all begging letters were prepared at and sent out from the orphanage, and the appellants, for the orphanage, received whatever money came in. No records appear to have been kept by appellants or by the orphanage which would form the basis for any kind of audit to establish the actual receipts or expenditures of all of these moneys by the corporation. There is enough evidence in the record to show that a scheme to defraud may have existed, and appellants do not deny this. But they contend that they themselves acted in good faith, that the representations made in the name of the Santa Rosa Orphanage [1] were not intended to deceive and were at most no more than exaggerated assertions of the institution's need. With that contention as their basic premise, they appeal chiefly on two grounds: (1) that a great deal of evidence highly prejudicial to their cause was admitted over objection, to show intent to defraud by use of the mails; and (2) that the trial court in charging the jury (a) gave charges and (b) refused to give requested charges which, in

---

[1] By charter amendment the name was changed on July 28, 1941.

both instances, affected their substantial rights and were highly prejudicial.

 As in most mail fraud cases, the question of intent here is paramount because the good faith of a defendant in a mail fraud case is ordinarily a complete defense. Gold v. United States, Huston v. United States, 8 Cir., 36 F.2d 16. Good faith and intent are questions for the jury, but a distinction must be drawn between intent to defraud, and carelessness or improvidence. McDonald v. United States, 6 Cir., 241 F. 793. "Often the line between honest belief and purposeful misrepresentation is fine and indistinct, between the two, however, lies guilt or innocence, and where the evidence is evenly balanced between guilt and innocence, a conviction cannot stand." Estep v. United States, 10 Cir., 140 F.2d 40, 42.

In the voluminous record (some 2,000 pages long) there is evidence of possible misappropriation by appellants of funds received from the campaign in such instances as the purchases of certain parcels of land, and the purchases of a second-hand Cadillac car and of a second-hand Chrysler. There was testimony from which the jury could infer that the appellants had converted funds to their own use. On the other hand, there was testimony to explain or justify most of those purchases. Appellants testified that they put in more than they took out. In the absence of any accurate or detailed records of income and expenditures kept by the appellants as managers of the orphanage, the question would necessarily have to be resolved by the jury upon the basis of their view of the credibility of the witnesses, and this in turn would be largely influenced by the evidence as a whole. If the evidence of conversion had been all, the conviction could not successfully be questioned. But there was also admitted other evidence of which appellants complain. Government counsel were permitted over strong objection to show at great length that the appellants had no license as was required by Texas law, to operate an orphange or to solicit funds for such a project; that appellants had failed to file income tax returns for the orphanage or in the alternative to file claim for its exemption as a charitable institution; and that appellant M. Coleman had threatened bodily harm to the receiver appointed by the State Court for the orphanage in other proceedings. The question is whether such evidence of misconduct was admissible to show the requisite intent to defraud, and, if not, whether the error was one which affected appellants' substantial rights.

Rule 52(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, provides that any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. The rule is almost a restatement of the rule on appeal. Section 391, Title 28 U.S.C.A. reads as follows:

"* * * On the hearing of any appeal, * * * the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

 The argument that evidence of collateral unlawful acts is admissible to prove intent is "based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand. Yet, in order to satisfy this demand, it is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance. * * * In short, there must be a similarity in the various instances in order to give them probative value,—as indeed the general logical canon requires." Wigmore on Evidence, 3d Ed., Vol. 2, § 302, p.200. And see detailed discussion of this question in Weiss v. United States, 5 Cir., 122 F.2d 675.

 We think that in no view of the case can violation of the federal income tax law, or threats of bodily harm in connection with a matter having no relation to the alleged scheme, be said to be acts of the requisite similarity to the act of scheming to defraud by use of the mails, or of actually doing so. That evidence was inadmissible for any purpose, since the appellants were not on trial for any of the acts sought to be shown by it, nor for any act similar

to them; nor could evidence of those acts tend to establish appellants' intent to defraud by use of the mails.

■■ But the case is different as to the evidence of violation of the Texas licensing laws. We think that was admissible for the sole purpose of showing intent to defraud. One requirement under those laws is that licensed orphanages shall keep specified records. The fact that appellants' informal system of record-keeping did not meet the Texas specifications was shown to be the chief reason for which they were denied a license. A lack of records might be used for concealing fraud, and the jury could find from evidence of such a lack an indication of intent. Wherever the intent of a party is a material ingredient in the issue of a case, collateral facts tending· to establish such intent are proper evidence. Bottomley v. United States, Fed. Cas. No. 1, 688, 1 Story 135; Wigmore on Evidence, op. cit. supra, p. 197. But they are proper evidence only to show the specific intent required to constitute the offense charged under the statute; they are not proper evidence to show other legal or moral failures on the part of the defendants.

Appellants further complain of the charge to the jury. We think several of their objections are well taken, but we shall discuss only a few of them. The trial court charged the jury:

"Furthermore, even though no false statements or representations were made, if you find from the evidence beyond reasonable doubt that the defendants devised and intended to devise a scheme or artifice for obtaining money or property by means of false and fraudulent pretenses and representations as charged in the indictment, and that they used the mails of the United States in carrying out the scheme or artifice, you will find them guilty as charged."

■ This is good law, but it is not applicable to this case, since the indictments were based upon the alleged fact that the letters sent out were false and known by the appellants to be so.

Again, the court charged: ·

"In determining guilt you will not consider whether or not the scheme and artifice to defraud as placed into execution by the defendant or defendants was successful or not; whether the defendants made money, or acquired property from the execution of the scheme is not material * * *."

■ This also was clearly error, since to say in this case that the acquisition of money or property from the alleged scheme is "not material," is to rule out consideration by the jury of the charges of the indictment.[2] The Government relied upon appellants' acquisition of money and property as evidence of the existence of the scheme; while the defendants contended and testified that they profited nothing, as showing their good faith.

Appellants requested seventeen instructions, five of which were given and one or two others covered in the general charge. Of those refused, some should have been given either in their original or in a modified form.

Defendant's requested instruction No. 5 is as follows:

"The court charges you that if any of the Government's witnesses have exhibited prejudice or bias against the defendants, and satisfied you that they have not testified truly, and are not worthy of belief and you think their testimony should be disregarded, you may disregard it altogether."

---

[2] "It was further a part of said scheme and artifice to defraud that the defendants would, and they did, by means of letters sent out in connection with the fund-raising campaigns, and by means of false and fraudulent representations aforesaid, cause and induce persons to whom said letters were directed, to contribute money and property, which said money and property would be, and was, intended by the persons making said contributions to be for the use and benefit of the Santa Rosa orphans of the Santa Rosa Orphanage, Santa Rosa, Texas.

"It was further a part of said scheme and artifice to defraud that the defendants would, and they did, convert to their own use and benefit, money contributed as aforesaid; and that they, the said defendants, would, and they did, convert money so contributed to uses other than for the benefit of the Santa Rosa orphans of the Santa Rosa Orphanage, Santa Rosa, Texas."

To the extent that the charge was limited to Government witnesses, it was perhaps objectionable, but it could have been corrected by the omission of the phrase "of the Government." Bias or prejudice on the part of any witness should be considered by the jury. Especially where the defendant requests it, an instruction on the point should be given. It is true that the court did give the usual general charge to the effect that the jury are the exclusive judges of the facts and of the credibility of witnesses and of the weight to be given to the testimony, but it is also true that the record discloses a good deal of ill-will throughout the proceedings, and we think that the charge, modified as we suggest, should have been given as a matter of protection to the defendants.

Defendants' requested instruction No. 6:

"You are charged that even though you may believe that one W. F. Pohlen conceived a scheme and artifice to defraud by sending out letters containing false or fraudulent representations and that the defendants may have acquiesced or acted with Pohlen and may thereafter have continued to send out other letters by way of follow-up letters or thank-you notes, yet you cannot convict the defendant or defendants under consideration by you, unless you further believe beyond reasonable doubt such defendant entered into the scheme and artifice knowingly, and with fraudulent intent, and not in good faith * * *."

Defendants' requested instruction No. 16:

"Irrespective of all other instructions of the court, you are instructed that if the defendants, at the time of sending the particular letter described in the particular count of the indictment under consideration by you, acted in good faith and with an honest intention [and] not to carry out the alleged scheme set out in the indictment, or if you have a reasonable doubt thereof you will acquit the defendants."

These charges also should have been given. In his main charge the trial court defined "good faith" as meaning an "honest belief." But in view of the circumstances of the case that was not enough. Good faith, if proved is ordinarily a complete defense and since their claims of good faith constituted the defendants' affirmative defense, they should have had the benefit of an emphasis by the trial court upon this point. Upon a new trial the substance of the instructions ought to be given in the charge.

There being error in the admission of much of the evidence and in the charge to the jury, the judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.