**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold A. MEYER, Defendant-Appellant.**

**No. 15292.**

United States Court of Appeals
Seventh Circuit.

April 18, 1966.

Rehearing Denied May 16, 1966.

R. G. Heckenkamp, Springfield, Ill., for appellant.

Richard E. Eagleton, U. S. Atty., Edward R. Phelps, Leon G. Scroggins, Asst. U. S. Attys., Springfield, Ill., for appellee.

Before DUFFY and SWYGERT, Circuit Judges, and GRANT, District Judge.

SWYGERT, Circuit Judge.

The defendant, Harold A. Meyer, was found guilty by a jury on fifteen counts of an indictment, eleven of them charging violations of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q (a), and four charging violations of the Mail Fraud Act, 18 U.S.C. § 1341.[1] The sole question in this appeal is whether the granting of four jury instructions by the district court over the defendant's objection was reversible error.

The defendant, a life insurance agent and manager of long experience, organized an Illinois corporation known as the Business and Professional Women's Holding Company in January 1960. The alleged purpose of the holding company was to buy the charter of an existing life insurance company or to form a new life insurance company which would issue policies exclusively to women at greatly reduced rates. The defendant personally promoted the sale of stock in the holding company in order to generate the necessary funds, travelling by plane between Illinois and Indiana in selling the stock, and using the mails in sending literature and delivering stock certificates.

Between October 1960 and May 1963, nearly one million shares of the holding company's common stock were sold for approximately $260,000. The defendant was in complete control of the funds received from investors. Yet at the end of that period, $3,000 in cash and some office furniture and equipment comprised the company's assets. The balance of the money was dissipated, the defendant benefiting directly in an

---

1. The defendant was sentenced to five years imprisonment on each of the counts charging violations of the Securities Act of 1933, the sentences to run concurrently. He also received concurrent five-year sentences on the counts charging violations of the Mail Fraud Act, but that portion of the sentence was suspended and the defendant was admitted to probation, the period of probation to begin after the first portion of the sentence was served.

amount exceeding $119,000. These benefits took the form of salaries, commissions, finder's fees, payments to the Insurance Management Institute (owned by the defendant), and other payments for his personal use.

The evidence showed that during the course of his sales activities the defendant repeatedly represented to prospective investors either that the holding company had purchased a life insurance company or that it had an option to do so. These representations were false. The holding company at no time possessed sufficient capital to purchase an existing company or to form a new company. The defendant further represented on numerous occasions that actress Ann Sothern or actress Joan Crawford would be the chairwoman of the board of directors of the insurance company. These representations, and many others, were also materially false.

■ This brief summary of the evidence shows that the jury could properly find the defendant guilty of a scheme to defraud investors in the sale of securities and the use of the mails and interstate transportation facilities in so doing, the central charges in the indictment. The Government's case was strong and persuasive. The only defense asserted at the trial was that the defendant acted in good faith. The four challenged instructions relate generally to this defense.

■ The defendant objects to the granting of the standard impeachment instruction on the ground that he was the only witness who was attempted to be impeached. The instruction was given in a form which applied to all witnesses. It correctly stated the law and was applicable to the case, even if the defendant was the only witness impeached. The granting of this instruction was not error.

■ The defendant contends that it was error to instruct the jury on admissions relating to the crimes charged because there was no evidence that he made any admissions. He defines a criminal admission as "the avowal or acknowledgment of a fact or circumstance from which guilt may be inferred." The evidence, particularly the evidence pertaining to the defendant's conversations with Government agents, contains several such admissions by him. The instruction was proper.

■ The jury was instructed that the defendant's ignorance of the falsity of his representations to prospective investors could not be excused if he could have ascertained the true facts by the exercise of that degree of care expected of a reasonably prudent person. The defendant says he was charged in the indictment with making willful statements, not reckless statements. But the instruction was given in connection with the defense of good faith and in that regard was a correct and applicable statement of the law. Stone v. United States, 113 F.2d 70, 75 (6th Cir. 1940); cf., United States v. Schaefer, 299 F.2d 625, 632 (7th Cir.), cert. denied, 370 U.S. 917, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962).

■ Finally, the defendant contends that it was error to instruct the jury that "under the law it is immaterial whether the alleged unlawful scheme is either successful or unsuccessful or that the defendant received any benefits as a result of the alleged scheme." He concedes that the instruction contained a correct statement of the law, but argues, relying upon Coleman v. United States, 167 F.2d 837 (5th Cir. 1948), that it was not applicable to the case since the indictment charged him with a successful fraud. A discussion of the *Coleman* case is unnecessary because we think that any possible error in the instruction was harmless. Whatever the charge in the indictment with respect to the success or failure of the defendant's scheme to defraud, the use to which money derived from the scheme was put was material only as it bore upon the issue of the defendant's good faith. Erwin v. United States, 242 F.2d 336 (6th Cir. 1957). The success of a scheme to defraud is not an element of the crime, although it may reflect the defendant's

fraudulent intent. Similarly, the failure to benefit from a scheme does not necessarily indicate innocence, although it may mirror the defendant's good faith. The jury was painstakingly instructed on the question of good faith. No instruction tendered by the defendant was refused. Taking the instructions as a whole, as we must, we find no prejudicial error in them. Beck v. United States, 305 F.2d 595, 600 (10th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed. 2d 123 (1962).

The judgment of conviction is affirmed.