UNITED STATES of America, Plaintiff-Appellee,

v.

**Jesse LEWIS, Defendant-Appellant.**

No. 78–5430.

United States Court of Appeals, Fifth Circuit.

April 10, 1979.

---

David G. Flack (Court-Appointed), Montgomery, Ala., for defendant-appellant.

Barry E. Teague, U. S. Atty., James E. Wilson, Charles R. Niven, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and TJOFLAT, Circuit Judges.

COLEMAN, Circuit Judge.

## I. FACTS

Jesse Lewis appeals his conviction by a jury of uttering and publishing as true a check with a falsely made and forged endorsement, 18 U.S.C. § 495. Because what could have been a lawful defense was not

allowed to go to the jury, we reverse and remand.[1]

When Jesse Lewis, an insurance agent, went to the home of Mrs. Irene Rice on May 27, 1975, to collect an insurance premium of approximately $30 due on a policy covering her grandchildren he probably had not the slightest thought that three years later the visit would end in federal court. It may be that he has since probably given little thought to how lucky he is that at trial time Mrs. Rice was still alive, to corroborate his version of what took place at her home.

One Lloyd Douglas had been frequenting Mrs. Rice's home, but had moved to Cleveland, Ohio. On April 28, 1975, the Veterans Administration sent Douglas a United States Treasury check for $832.01, directed to him at the Rice address, where he had received previous checks.

When Lewis arrived at Mrs. Rice's home to collect the insurance premium, she told him that Douglas had authorized her to cash the check to reimburse her for a $300 loan she had made him and to hold the balance for him. Mrs. Rice could not read and write and asked Lewis to cash the check "as a favor" to her. Lewis first told her that he could not do it because he did not have that much money on his person. He later agreed, however, to take the check to the Bank and cash it, returning to her all of the proceeds above the $30 insurance premium—which was done. Lewis had asked her to endorse the check, but she could not do it because she could not read and write.

Lewis signed Douglas' name to the check, signed his own name to it, and cashed it at his own Bank, where his business and residential addresses were on file, including subsequent changes of address.

After a delay of approximately 2½ years, on November 14, 1977, a Secret Service agent questioned Lewis concerning the check. Lewis then said that he could not remember anything about the check, that he would have to "check into it", and voluntarily provided handwriting and fingerprint samples. Lewis later determined that the signatures on the check were his but he did not so inform the Agent until he was seen again on January 27, 1978. On that date, Lewis was arrested and put in jail, charged with theft and forgery, charges which the federal magistrate promptly dismissed. Subsequently, Lewis was indicted for the uttering charge now on appeal.

Mrs. Rice, a sixty-nine year old great-grandmother, was called to the stand as the first witness for the defense. Government counsel approached the Bench and there was an unrecorded bench conference, after which, in chambers, the Judge warned her of her right not to incriminate herself. She was told that she might say something that would result in her being prosecuted for her part in the check transaction. Had she declined to testify, Lewis' defense would have been seriously crippled, but Mrs. Rice responded that "I ain't done nothing illegal", and took the stand.

Referring to Douglas, she said that "after he had found out where his wife was" he borrowed $300 from her, saying that he had another check coming, which she could cash and recover the money, sending him the balance. When the check came she got Lewis to cash it for her and the balance of it "is up there in the bank". Douglas had never sent her his address and she had not seen him until he appeared in Court. Mrs. Rice closed her testimony by saying, "Now, look, I am too old a woman to be sitting up here telling stories".

## II.  JURY INSTRUCTIONS

Lewis proposed instructions concerning his defense of authority to cash the check.

---

1.  Lewis raises eight claims of alleged reversible error committed by the court below: (1) insufficiency of the evidence; (2) denial of Lewis' new trial motion; (3) pre-indictment delay; (4) limited opportunity to cross-examine complaining witness; (5) exclusion of evidence; (6) court examination of witnesses; (7) admission of extrinsic evidence to impeach defense witness; (8) and, modification and omission of requested jury instructions. Only No. 8, discussed herein, was meritorious.

Proposed instruction # 2 would have informed the jury that Lewis' entry of Douglas' endorsement had to be *without authority* before it could be considered a false or forged writing. The District Court turned this around by charging that endorsing Douglas' name would constitute a false or forged writing if entered "without authority from the owner".[2]

Lewis' proposed instruction # 6 read as follows:

A false or forged writing is not established by the bare fact that one man has signed the name of another to a writing having apparent legal significance because the signing

(1) may have been authorized, in which case the writing is not false, or,

(2) though unauthorized may have been in the bona-fide belief in the existence of such authority, in which case, although the writing is actually false, it was prepared without an intent to defraud.

The trial judge rejected this instruction altogether. At the close of the jury charge, Lewis requested that "Charge 6 that the Defendant submitted to the Court be added, be given to the jury". The District Court declined, noting that it would treat Lewis' request as an "exception to the charge".

As a threshold matter, the government argues that appellate review of the "from the owner" modification is precluded unless it is plain error. We need not linger over this argument because Lewis specifically urged that Instruction # 6 be given and it was expressly refused.

■ It has long been well established in this Circuit that it is reversible error to refuse a charge on a defense theory for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent. *United States v. Conroy*, 5 Cir., 1979, 589 F.2d 1258 at 1273 (1979); *United*

States v. Parker*, 5 Cir., 1978, 566 F.2d 1304, 1305, *cert. denied*, 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808; *United States v. Hammons*, 5 Cir., 1978, 566 F.2d 1301, 1302, *vacated on other grounds*, —— U.S. ——, 99 S.Ct. 68, 58 L.Ed.2d 102; *United States v. Flom*, 5 Cir., 1977, 558 F.2d 1179, 1185; *United States v. Taglione*, 5 Cir., 1977, 546 F.2d 194, 198.

It cannot be doubted that Lewis' position as to authority, and good faith reliance on apparent authority, presented a lawful defense. In *United States v. Gilbreath*, 5 Cir., 1971, 452 F.2d 992, a case factually similar to the case *sub judice*, the defendant Gilbreath endorsed the name of the payee, as well as his own name, address, and telephone number, on the back of a government check. Gilbreath testified that the payee, who once shared a room with him, had given him permission to cash the check to reimburse Gilbreath for rental money the payee owed the defendant. The payee, on the other hand, denied that he owed Gilbreath money and, further, denied that he had given Gilbreath authority to cash the government check. The *Gilbreath* panel concluded that the defendant would not be guilty of forgery under 18 U.S.C. § 495 "if the defendant had authority from the payee to cash the check". *Id.* at 993.

While Lewis does not contend that he personally received authority from the payee Douglas to cash the government check, he did contend that he relied in good faith on Mrs. Rice's assurances that she had been so authorized by a former occupant of her home.

■ If Mrs. Rice had Douglas' authority to cash the check, she would not be guilty of forgery under § 495 if she had exercised that authority, *United States v. Gilbreath, supra*, 452 F.2d at 993. *Ergo*, if Mrs. Rice had the authority and asked Lewis to do the same thing on her behalf and for her benefit then he would not be guilty of forgery for complying with her directions.

---

2. The instruction, as given, provided:

The writing of a payee's endorsement on a genuine United States Treasury check, by a person other than the payee, if done willfully, and without authority *from the owner*, and with intent to defraud, is a false or forged writing. (Emphasis on words *added* by District Court).

There is an additional factor. To be guilty of uttering or publishing a false or forged instrument in violation of § 495, the defendant must have "intent to defraud". Good faith has long been recognized as a complete defense to charges involving an intent to defraud. *See, e. g., Durland v. United States*, 161 U.S. 306, 313–14, 16 S.Ct. 508, 40 L.Ed. 709 (1895) (mail fraud); *United States v. Boswell*, 5 Cir., 1978, 565 F.2d 1338, 1343 (mail and wire fraud), *cert. denied,* — U.S. ——, 99 S.Ct. 81, 58 L.Ed.2d 110; *United States v. Hagerty*, 5 Cir., 1977, 561 F.2d 1197, 1199 (interstate transportation of falsely made securities); *Kroll v. United States*, 5 Cir., 1970, 433 F.2d 1282, 1285–86 (mail fraud); *United States v. Diamond*, 5 Cir., 1970, 430 F.2d 688, 691–692 (mail fraud); *Coleman v. United States*, 5 Cir., 1948, 167 F.2d 837, 839, 841 (mail fraud).

The crucial question, then, is whether there was an underlying

foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.

*United States v. Parker, supra*, 566 F.2d at 1305, *cert. denied,* 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 102 (1978); *United States v. Hammons, supra*, 566 F.2d at 1302–03.

In answering that question, vis a vis the issue of whether the instruction should have been given, allowing the jury to consider the defense thus raised, we must accept the testimony most favorably to the defendant. *United States v. Parker, supra; United States v. Hammons, supra; United States v. Benavidez*, 5 Cir., 1977, 558 F.2d 308, 309.

As we observed in *Gilbreath*, we are certain "the issue as to authority was drawn." 452 F.2d at 993. There was a sufficient evidentiary foundation to present the issue and to warrant an instruction concerning authority and apparent authority to endorse. Certainly, the issue of good faith should have been submitted.

The government maintains, however, that no reversible error was committed because the instructions adequately advised the jury as to Lewis' theory of defense. Specifically, the government maintains that the "from the owner" modification "particularized the accepted general definition [of forgery] for the facts of the instant case." Moreover the government argues that Lewis' proposed instruction # 6 merely would have been cumulative of the "intent to defraud" instruction given by the District Court. These arguments cannot be accepted.

We have repeatedly held that "a defendant is entitled to a charge which precisely and specifically, rather than merely generally or abstractly, points to the theory of his defense", *United States v. Wolfson*, 5 Cir., 1978, 573 F.2d 216, 221; *United States v. Gilbreath, supra*, 452 F.2d at 994; *Perez v. United States*, 5 Cir., 1961, 297 F.2d 12, 16. The charge given here simply did not comply with that standard.

Lewis' proposed instruction # 2 was modelled after the standard forgery definition instruction[3] which was compared by the *Gilbreath* panel with the instructions used by the district court in that case. By modifying the standard instruction to charge the jury that the writing was a forgery if Lewis lacked authority "from the owner" the jury was exposed to the erroneous impression that Mrs. Rice could not have authorized Lewis, either on actual or good-faith authority, to cash the check. It foreclosed the possibility that Lewis had justifiably, in good faith, relied on Mrs. Rice's assurances.

Neither Lewis nor Mrs. Rice had claimed that she was "the owner". Both recognized that Douglas was entitled to that portion of the proceeds of the check remaining after Mrs. Rice had been reimbursed according to Douglas' alleged instructions. Moreover, the trial judge had instructed the jury, during the trial, that "it was his [Douglas'] money at the time the check was negotiated."

We also conclude that the general "intent to defraud" instruction was inade-

---

3. *See* 2 Devitt and Blackmar, Federal Jury Practice and Instructions, § 53.05.

quate.[4] In *United States v. Diamond, supra*, 430 F.2d at 697, we held that the trial court committed reversible error when, while providing supplemental instructions, it summarized the elements of mail fraud, 18 U.S.C. § 1341, including "intent to defraud" but made "no reference whatever to the only real defense offered, that of good faith". Similarly, in *Coleman v. United States, supra*, 167 F.2d at 841, we held that the trial court erred in omitting two of defendant's requested instructions concerning the defense of good faith, notwithstanding the fact that the district court had, during its main charge, "defined 'good faith' as meaning an 'honest belief'." *Id.* The *Coleman* Court concluded that the defense "should have had the benefit of an emphasis by the trial court upon this point [that good faith is a complete defense]", reasoning that "good faith constituted the defendants' affirmative defense". *Id.*

Lewis' defense was that he had been authorized or, in good faith believed he had been authorized, to cash the check. Under the facts of this case, he was entitled to a specific instruction on authority, apparent authority, and good faith, especially since the evidence showed that he had cashed the check in a perfectly open manner at his own bank and had retained less than 4% of the proceeds for an insurance obligation which Mrs. Rice wanted to pay.

## CONCLUSION

The conviction is reversed and the case remanded to the District Court so that, if the government chooses to try Lewis again, he may have his defense adequately submitted to the jury.

### REVERSED and REMANDED.

4. The District Judge instructed the jury with respect to intent to defraud as follows:

Now, intent to defraud is the essence of the offense charged and it is the essence, as I understand it, of the defense made by the defendant. The evidence in the case need not establish that the United States or anyone was actually defrauded but only that the accused acted willfully and with the intent to defraud. I will get back and describe willfully to you a little later. To act with an intent to defraud means to act with the specific intent to deceive or cheat, ordinarily for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self. And that really is the essence of the defense in this case.